1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

DAVID J. CORNELL,

                Plaintiff,

    v.

ANDREW SAUL,* Acting Commissioner of
Social Security,

                Defendant.

Case No. 2:19-cv-00104-APG-BNW

**REPORT AND RECOMMENDATION**

13    This case involves review of an administrative action by the Commissioner of Social

14  Security denying Plaintiff David J. Cornell's application for disability insurance benefits and

15  supplemental security income under Titles II and XVI of the Social Security Act, respectively.

16  The court reviewed Plaintiff's Memorandum in Support of Motion for Summary Judgment or

17  Remand (ECF No. 22), filed May 31, 2019, and Defendant's Cross Motion to Affirm and

18  Response to Plaintiff's Motion for Reversal or Remand (ECF No. 24), filed July 31, 2019.

19  Plaintiff did not file a reply. This matter was referred to the undersigned magistrate judge on

20  May 7, 2019 for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C)

21  and Local Rule IB 1-4.

22  **I.**       **BACKGROUND**

23        **1.**       **Procedural History**

24        On February 3, 2016, Plaintiff applied for disability insurance benefits and supplemental

25  security income under Titles II and XVI of the Act, respectively, alleging an onset date of March

26
27
28

---

* Andrew Saul has been substituted for his predecessor in office, Nancy A. Berryhill, pursuant to
Federal Rule of Civil Procedure 25(d).

1    1, 2012.  AR[1] 26.  Plaintiff's claim was denied initially and on reconsideration.  AR 138-141;

2    147-149.  A hearing was held before an Administrative Law Judge ("ALJ") on January 24, 2018.

3    AR 46-70.  On June 29, 2018, the ALJ issued a decision finding Plaintiff was not disabled.

4    AR 23-40.  The ALJ's decision became the Commissioner's final decision when the Appeals

5    Council denied review.  AR 7-12.  Plaintiff, on January 17, 2019, commenced this action for

6    judicial review under 42 U.S.C. §§ 405(g).  (*See* IFP App. (ECF No. 1)).

7    **II.**    **DISCUSSION**

8        **1.**    **Standard of Review**

9        Administrative decisions in social security disability benefits cases are reviewed under 42

10    U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g)

11    provides: "Any individual, after any final decision of the Commissioner of Social Security made

12    after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a

13    review of such decision by a civil action . . . brought in the district court of the United States for

14    the judicial district in which the plaintiff resides."  The court may enter "upon the pleadings and

15    transcripts of the record, a judgment affirming, modifying, or reversing the decision of the

16    Commissioner of Social Security, with or without remanding the cause for a rehearing."  *Id.*  The

17    Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the

18    Commissioner *de novo*.  *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

19        The Commissioner's findings of fact are conclusive if supported by substantial evidence.

20    *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  However, the

21    Commissioner's findings may be set aside if they are based on legal error or not supported by

22    substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir.

23    2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines

24    substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

25    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

26    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d

27

28        [1] AR refers to the Administrative Record in this matter.  (Notice of Manual Filing (ECF No. 17)).

1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2.    Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual must also provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

1    The ALJ follows a five-step sequential evaluation process in determining whether an

2    individual is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If

3    at any step the ALJ determines that he can make a finding of disability or non-disability, a

4    determination will be made, and no further evaluation is required.  *See* 20 C.F.R.

5    § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

6    Step one requires the ALJ to determine whether the individual is engaged in substantial

7    gainful activity ("SGA").  20 C.F.R. § 404.1520(b).  SGA is defined as work activity that is both

8    substantial and gainful; it involves doing significant physical or mental activities usually for pay

9    or profit.  *Id.* § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not

10   disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to the step

11   two.

12   Step two addresses whether the individual has a medically determinable impairment that

13   is severe or a combination of impairments that significantly limits her from performing basic

14   work activities.  *Id.* § 404.1520(c).  An impairment or combination of impairments is not severe

15   when medical and other evidence establishes only a slight abnormality or a combination of slight

16   abnormalities that would have no more than a minimal effect on the individual's ability to work.

17   *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2]  If the

18   individual does not have a severe medically determinable impairment or combination of

19   impairments, then a finding of not disabled is made.  If the individual has a severe medically

20   determinable impairment or combination of impairments, then the analysis proceeds to step three.

21   Step three requires the ALJ to determine whether the individual's impairments or

22   combination of impairments meet or medically equal the criteria of an impairment listed in 20

23   C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If

24   the individual's impairment or combination of impairments meet or equal the criteria of a listing

25   and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20

26

27        [2]  SSRs constitute the SSA's official interpretation of the statute and regulations.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).

28   They are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

1    C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not

2    meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds

3    to step four.[3]

4    But before moving to step four, the ALJ must first determine the individual's residual

5    functional capacity ("RFC"), which is a function-by-function assessment of the individual's

6    ability to do physical and mental work-related activities on a sustained basis despite limitations

7    from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the

8    ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the

9    symptoms can reasonably be accepted as consistent with the objective medical evidence and other

10   evidence.  20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p.  To the extent that statements

11   about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

12   substantiated by objective medical evidence, the ALJ must make a finding on the credibility of

13   the individual's statements based on a consideration of the entire case record.  The ALJ must also

14   consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and

15   SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

16   Step four requires the ALJ to determine whether the individual has the RFC to perform

17   her past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either

18   as the individual actually performed it or as it is generally performed in the national economy

19   within the last 15 years or 15 years before the date that disability must be established.  In

20   addition, the work must have lasted long enough for the individual to learn the job and performed

21   a SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform her

22

23          [3] At "each level in the administrative review process," the SSA must follow a special technique to

24   evaluate mental impairments at steps two and three.  20 C.F.R. § 404.1520a.  The special technique
     requires the ALJ to substantiate the presence of a medically determinable impairment using pertinent

25   symptoms, signs, and laboratory findings, and then to rate the degree of functional limitation that results
     from the mental impairment in four broad categories: activities of daily living; social functioning;

26   concentration, persistence, or pace; and episodes of decompensation.  *Id.* § 404.1520a(b)-(c).  If the degree
     of limitation in the first three categories is none or mild, and the claimant has no episodes of

27   decompensation of extended duration, then the claimant's mental impairment is not severe.  *Id.*
     § 404.1520a(d)(1).

28

1    past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW

2    or does not have any PRW, then the analysis proceeds to step five.

3         The fifth and final step requires the ALJ to determine whether the individual is able to do

4    any other work considering her RFC, age, education, and work experience.  20 C.F.R.

5    § 404.1520(g).  If she is able to do other work, then a finding of not disabled is made.  Although

6    the individual generally continues to have the burden of proving disability at this step, a limited

7    burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is

8    responsible for providing evidence that demonstrates that other work exists in significant numbers

9    in the economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

10        Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

11   §§ 404.1520 and 416.920.  AR 28-39.

12        At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from

13   the alleged onset date of March 1, 2012.  AR 28.

14        At step two, the ALJ found Plaintiff had the following medically determinable "severe"

15   impairments: history of cerebrovascular accidents/transient ischemic attacks; coronary artery

16   disease with mitral valve regurgitation and cardiac catheterization; history of alcohol use disorder

17   with alcohol related neuropathy; degenerative disc disease of the cervical spine; lumbar

18   radiculopathy; osteoporosis of the lumbar spine; status post-right wrist fracture with open

19   reduction internal fixation (ORIF); and status post-right carpal tunnel release.  AR 29.  The ALJ

20   found Plaintiff's hypertension, Raynaud's disease, hyperlipidemia, chronic kidney disease,

21   allergic rhinitis, restless leg syndrome, status post-left inguinal hernia, and underarm cysts to be

22   non-severe.  *Id*.  Additionally, the ALJ found Plaintiff's mental impairments (i.e., depressive

23   disorder, adjustment disorder with anxiety, generalized anxiety disorder, and mild neurocognitive

24   disorder) to be non-severe.  AR 30.

25        At step three, the ALJ found Plaintiff did not have an impairment or combination of

26   impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P,

27   Appendix 1.  AR 31.

28

At step four, the ALJ found Plaintiff has the residual functional capacity to perform medium work with the following exceptions: Plaintiff can frequently climb ramps, stairs, and ladders; Plaintiff can frequently stoop, kneel, crouch, and crawl; Plaintiff can occasionally climb ropes and scaffolds; Plaintiff can occasionally be exposed to hot and cold temperature extremes, hazards, and vibration; and Plaintiff can frequently use his right hand for fingering and handling. AR 32.  The ALJ also found that Plaintiff was unable to perform any past relevant work.  AR 38.

At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform considering Plaintiff's age, education, work experience, and residual functional capacity.  AR 38-39.  Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from March 1, 2012 through June 29, 2018, the date of the ALJ's decision.  AR 39-40.

### 3.    Analysis

#### a.    Whether the ALJ properly weighed opinion evidence

##### i.    The parties' arguments

Plaintiff first moves to remand this matter on the grounds that the ALJ improperly gave great weight to state agency reviewer Dr. Paterno Jurani, M.D.  Plaintiff argues that the ALJ should not have given Dr. Jurani's opinion this much weight because he did not review all of Plaintiff's medical records.  This is so because Plaintiff underwent additional tests and treatment (e.g., cervical spine MRI; surgical procedure of a right endoscopic CT release and volar fasciotomy due to fracture) and developed new symptoms (e.g., decreased range of motion and paresthesia to the lower extremities; bilateral weakness in right hand grip strength) after Dr. Jurani completed his review.

The Commissioner responds by arguing that "the post-review dated evidence was either consistent with the earlier evidence, insubstantial or taken into account by these physicians, treating physicians, other medical opinions and/or by the ALJ when determining Plaintiff's RFC."[4]

---

[4] The Commissioner's motion discusses both Dr. Jurani's and Dr. Navdeep Dhaliwal's opinions when discussing state agency physicians.  But it appears to this court that Plaintiff's motion is only

1                   **ii.**       **The ALJ's decision**

2    As noted above, the ALJ assigned significant weight to Dr. Jurani's opinion, citing its

3    consistency with the record.  AR 36.

4                 **iii.**       **How an ALJ may weigh opinion evidence**

5    The ALJ's role is to consider the evidence, state an interpretation thereof, and make

6    findings accordingly. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ is not

7    required to discuss every piece of evidence in the record. *Vincent on Behalf of Vincent v.*

8    *Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Also, an ALJ may choose to give more weight

9    to an opinion that is more consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4)

10    ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to

11    that opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  Relevant factors when

12    evaluating a medical opinion include the amount of relevant evidence that supports the opinion,

13    the quality of the explanation provided in the opinion, and the consistency of the medical opinion

14    with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v.*

15    *Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

16                **iv.**     **Whether the ALJ properly weighed opinion evidence**

17    The ALJ did not err in assigning great weight to Dr. Jurani's opinion. This is so for at

18    least two reasons.

19    First, an ALJ may choose to give more weight to an opinion that is more consistent with

20    the evidence in the record.  20 C.F.R. § 416.927(c)(4).  The ALJ did just that with all of the

21    medical opinions he considered, including Dr. Jurani's.  The ALJ explicitly found that Dr.

22    Jurani's opinion is consistent with the record and Plaintiff does not demonstrate otherwise.

23    Second, while Dr. Jurani may not have had access to all of Plaintiff's medical records

24    (because some were created after Dr. Jurani's review of Plaintiff's file), the ALJ did.  And the

25    ALJ discussed many of the records Plaintiff alleges Dr. Jurani did not have access to.  For

26        _____

27    concerned with Dr. Jurani's opinion, as Plaintiff cites only to pages 97 and 98 of the record when
discussing the state agency reviewer's opinion.  These two pages include only Dr. Jurani's opinion.  The

28    court will, therefore, address Plaintiff's argument as it relates to Dr. Jurani's opinion.

example, Plaintiff contends Dr. Jurani did not review Plaintiff's heart catherization.  The ALJ, however, discussed Plaintiff's history of cardiovascular impairments, including a left heart catherization.  AR 33.  The ALJ also explained that Plaintiff's doctor "noted throughout the record that the [Plaintiff] is doing well from a cardiac standpoint and has no restrictions . . . ."  *Id*.  The ALJ further noted that Plaintiff's doctor's recommendations included "a course of conservative treatment consisting of Aspirin and smoking cessation . . . ."  *Id*.

Additionally, Plaintiff appears to misinterpret the record and the ALJ's decision with respect to Plaintiff's cervical spine MRI.  Plaintiff argues the ALJ should not have assigned such great weight to Dr. Jurani's opinion, in part, because the doctor's opinion was completed before Plaintiff's cervical spine MRI.  But contrary to Plaintiff's argument, Dr. Jurani's opinion, which is dated May 24, 2016, occurred after Plaintiff's cervical spine MRI, which took place on April 28, 2016.  *See, e.g.,* AR 586.  Furthermore, the ALJ explained in his decision that he factored this MRI into Plaintiff's RFC determination.  AR 34 ("MRI of the [Plaintiff's] cervical spine from April 28, 2016 showed degenerative disc disease at C5-C7 with mild spinal canal stenosis . . . .  While the foregoing objective reports are consistent with some abnormality of the [plaintiff's] spine, there is no evidence of any nerve root impingement or severe stenosis to cause the severity of pain and limitations alleged.")

Plaintiff also argues that the ALJ "would have been forced to act as his own medical expert and translate the data himself" because he assigned great weight to an opinion that took place before Plaintiff underwent additional treatment and experienced additional symptoms.  The Court disagrees.  The ALJ also considered the opinions of the doctors who performed the tests and treatments after Dr. Jurani's review and assigned great weight to several of Plaintiff's treating physicians (e.g., Dr. Raj Chanderraj, M.D.[5] and Dr. Kenny Hanna, M.D.).  AR 37.  In fact, one of

---

[5] Notably, the ALJ assigns great weight to Dr. Chanderraj's opinion that Plaintiff's "cardiovascular impairments do not impose any functional limitations."  AR 37.  The ALJ, however, assigns little weight to Dr. Chanderraj's opinion that Plaintiff would miss three days of work per month "as it is inconsistent with the remainder of the opinion as well as the evidence as a whole."  *Id*.  An ALJ may reject opinions that are internally inconsistent.  *Nguyen*, 100 F.3d at 1464.  An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources.  *Tommasetti*, 533 F.3d at 1041.

these treating physicians, Dr. Hanna, performed Plaintiff's right distal radius volar plate removal on June 23, 2017—a procedure Plaintiff cites as material for the reviewing doctor to have considered.  AR 779.  Dr. Hanna concluded at a post-operative evaluation on July 5, 2017 that Plaintiff is "to resume full unrestricted activities, work duties and weightbearing as tolerated" and to follow-up with Dr. Hanna "as needed."  AR 777.  Accordingly, the ALJ did not act as his own medical expert, but rather relied on medical records and treating physician opinions in his decision.  As such, the court finds no error in the weight the ALJ assigned to Dr. Jurani's opinion.

### b.    Whether the ALJ failed to develop the record

#### i.    The parties' arguments

Plaintiff next moves to remand this matter on the grounds that the ALJ failed to develop the record.  Specifically, Plaintiff argues the ALJ should have retained a medical expert to evaluate the medical records that were not available to Dr. Jurani or ordered a more current consultative examination.  The Commissioner responds by arguing that the ALJ "had sufficient information to assess the severity of Plaintiff's alleged mental and physical impairments and nothing further was required of him."

#### ii.    The ALJ's decision

In determining Plaintiff's RFC, the ALJ considered the opinions of state agency reviewing doctors, consultative examiners, and treating physicians.

#### iii.    When an ALJ has a duty to develop the record

The ALJ has a duty to develop a full and fair record.  *Rowan v. Colvin*, 652 F. App'x. 541, 543 (9th Cir. 2016); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty includes developing the plaintiff's "complete medical history of at least the preceding twelve months . . . ."  42 U.S.C.A. § 423(d)(b)(5).  Additionally, the ALJ's duty to develop the record is triggered if the medical evidence is either ambiguous or inadequate to allow for proper evaluation.  *Schultz v. Astrue*, 362 F. App'x. 634, 636 (9th Cir. 2010).

Social Security regulations require an ALJ to order a plaintiff undergo physical or mental examinations if those examinations are necessary to resolve the issue of disability.  20 C.F.R.

§§ 404.1519a(b), 416.927(c)(3).  The Ninth Circuit has held that consultative examinations are necessary if there is evidence of an impairment, but the evidence is insufficient to determine disability.  *Rochin v. Barnhart*, 204 F. App'x. 601, 602 (9th Cir. 2006).

####          iv.      Whether the ALJ had a duty to further develop Plaintiff's record

Plaintiff argues the ALJ should have developed Plaintiff's record by, "at a minimum[,]" retaining "a medical expert to evaluate the records of the cervical MRI, objective evidence of lower extremity paresthesia and hand/finger issues," or "by ordering a subsequent [consultative exam]."  Plaintiff cites to *Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001) to support this argument.  Plaintiff, however, appears to have misplaced reliance on *Mayes*.  The plaintiff in *Mayes*, like Plaintiff here, argued the ALJ had a duty to develop the record to diagnose her herniated discs.  *Id*. at 459.  But the Ninth Circuit disagreed, explaining this "would improperly shift h[is] own burden to the ALJ."  *Id*.  This is because, as discussed above, (1) it is Plaintiff's duty to prove he is disabled, and (2) an ALJ's duty to develop the record is only triggered when there is ambiguous or inadequate evidence.  Notably, Plaintiff neither argues that the evidence was ambiguous nor inadequate.  Accordingly, Plaintiff failed to demonstrate that the ALJ erred in not further developing the record.

###          c.      Whether the ALJ erred in not discussing the opinions of Plaintiff's two social workers

####          i.      The parties' arguments

Plaintiff next moves to remand this matter on grounds that the ALJ erred by not discussing the opinions of the social workers Plaintiff had seen—Rebecca Madeen, a social worker, and Linda Wolfe, a marriage and family therapist and alcohol and drug counselor.

The Commissioner responds by asserting that Ms. Madeen and Ms. Wolfe, in their respective professions, do not constitute "acceptable medical sources."  Therefore, the Commissioner argues, they "cannot establish the existence of a medically determinable impairment, cannot give medical opinions, and cannot be considered treating sources whose medical opinions may be entitled to controlling weight."  Additionally, the Commissioner argues

1  that the ALJ is not required to discuss every piece of evidence in the record.  The Commissioner

2  further notes that the ALJ relied on medical sources—a treating physician and two examining

3  physicians—to determine that Plaintiff's mental impairments are non-severe.

4              ii.       **The ALJ's decision**

5       The ALJ did not discuss either Ms. Madeen or Ms. Wolfe's opinion in his decision.

6              iii.      **Whether an ALJ must discuss non-medical source opinions**

7       The ALJ must evaluate every medical opinion received according to a list of factors set

8  forth by the Social Security Administration.  20 C.F.R. § 416.927(c).  The opinion of an

9  acceptable medical source, such as a physician or psychologist, is given more weight than that of

10  "other source[s]."  20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir.

11  1996).

12       "Other sources" include teachers, social workers, spouses, and other non-medical sources.

13  20 C.F.R. § 404.1513(d).  Non-medical testimony can never establish a diagnosis or disability

14  absent corroborating competent medical evidence.  *Nguyen*, 100 F.3d at 1467.  However, the ALJ

15  is still required to "consider observations by non-medical sources as to how an impairment affects

16  a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  And an

17  ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

18  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th

19  Cir. 1993).

20              iv.       **Whether the ALJ erred by not considering Plaintiff's non-medical**
21  **source opinions**

22       The court does not know whether the ALJ considered and discounted the medical opinions

23  of either Ms. Madeen or Ms. Wolfe because he did not discuss either opinion in his decision.

24  And because an ALJ may only discount testimony from "other sources" if he "'gives reasons

25  germane to each witness for doing so[,]'" and the ALJ did not discuss either Ms. Madeen or Ms.

26  Wolfe's opinion in his decision, he erred.  *See Molina*, 674 F.3d at 1111 (internal quotations

27  omitted); *see also Nguyen*, 100 F.3d at 1467 (noting that because lay witnesses can testify to a

28

1    plaintiff's symptoms, their testimony cannot "be disregarded without comment").  Errors are

2    "harmless if they are 'inconsequential to the ultimate nondisability determination' and . . . [the

3    court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

4    have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir.

5    2015).  This court can neither conclude that this error was inconsequential to the ALJ's non-

6    disability finding nor that no reasonable ALJ, when fully crediting the testimony, could have

7    reached a different decision.[6]  Accordingly, the error is not harmless.  *See Stout,* 454 F.3d at 1055.

8         The Commissioner's argument that the ALJ is not required to discuss records that are not

9    significant or probative does not change the analysis.  While the Commissioner is correct, this is

10   different from the ALJ's obligation to discuss each medical opinion, including those made by

11   non-acceptable medical sources.  Put another way, the ALJ does not need to discuss every piece

12   of evidence in the record, but he must discuss every acceptable and non-acceptable medical

13   opinion even if he grants it little or no weight.

14        **d.      Whether the ALJ erred in considering Plaintiff's pain and symptom**

15   **testimony**

16             **i.      The parties' arguments**

17        Plaintiff next moves to remand on the grounds that the ALJ failed to provide clear and

18   convincing reasons for rejecting his pain and symptom testimony.  This is so, according to

19   Plaintiff, because the ALJ relied on two flawed reasons to find Plaintiff's pain and symptom

20   testimony not fully credible: (1) insufficient "objective findings" existed to support Plaintiff's

21   allegations of disabling symptoms, and (2) Plaintiff's ability to perform some activities of daily

22   living was inconsistent with his allegations of disabling symptoms.

23

24

25        [6] The court has reviewed the opinions of Ms. Madeen, AR 912, and Ms. Wolfe.  AR 622.  Even
     though Ms. Wolfe's opinion does not offer much information on Plaintiff's mental and physical
26   impairments, Ms. Madeen's opinion does provide greater insight into Plaintiff's mental and physical
     conditions.  As such, an ALJ, when fully crediting Ms. Madeen's testimony, could have reached a
27   different decision.  Importantly, the court is not making a finding that an ALJ should fully credit either Ms.
     Madeen or Ms. Wolfe's opinions; the court simply is holding that the ALJ must consider these opinions
28   and explain what weight he will grant them.

1   The Commissioner argues that the ALJ properly evaluated Plaintiff's pain and symptom

2   testimony.

### ii.    The ALJ's decision

4   The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting

5   effects of his symptoms not entirely consistent with the medical evidence and other evidence in

6   the record.  AR 32.  Also, the ALJ found Plaintiff could engage in activities of daily living that

7   "are not limited to the extent one would expect, given the complaints of disabling symptoms and

8   limitations."  AR 36.

### iii.    When symptom claims may be rejected

10   An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony

11   regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there

12   is objective medical evidence of an underlying impairment which could reasonably be expected to

13   produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks

14   omitted).  "The claimant is not required to show that [the plaintiff's] impairment could reasonably

15   be expected to cause the severity of the symptom [the plaintiff] has alleged; [the plaintiff] need

16   only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*,

17   572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

18   Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the

19   ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ]

20   gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

21   1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

22   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

23   undermines the [plaintiff's] complaints."  *Id*. (quoting  *Lester v. Chater*, 81 F.3d 821, 834 (9th

24   Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with

25   findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

26   discredit [the plaintiff's] testimony.").  "The clear and convincing [evidence] standard is the most

27   demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

28   2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, among other factors, (1) the plaintiff's reputation for truthfulness; (2) inconsistencies in the plaintiff's testimony or between his testimony and his conduct; (3) the plaintiff's daily living activities; (4) the plaintiff's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the plaintiff's condition. *Thomas*, 278 F.3d at 958-59.

### iv.    Whether the ALJ erred in rejecting Plaintiff's symptom claims

Plaintiff argues the ALJ relied on two flawed reasons to find Plaintiff's pain and symptom testimony not fully credible.

First, the ALJ found that insufficient objective findings existed to support Plaintiff's pain and symptom testimony, citing objective findings, Plaintiff's activities of daily living, and medical source opinions.  AR 32-37.  In support of this finding, the ALJ noted that "objective and clinical findings do not support his [sic] the severity of his allegations [for back and neck pain]."  AR 34.  The ALJ also explained that "objective findings, diagnostic studies, treatment modalities, and treatment record on the whole illustrate the [Plaintiff's] limitations from alcohol related neuropathy are not debilitating."  *Id*.  Further, the ALJ observed that Plaintiff's "Electroencephalogram (EEG) testing was within normal limits[,]" Plaintiff's MRI of "his lower extremities showed no abnormality[,]" and a "muscle biopsy revealed no abnormalities . . . ."  AR 33-34.  Additionally, the ALJ noted Plaintiff's "[c]hest x-rays are negative and [Plaintiff] reported normal blood pressure readings . . . ."  *Id*.

The ALJ provided a detailed explanation supporting the inconsistencies between the objective evidence and Plaintiff's pain and symptom testimony.  Plaintiff is correct in arguing that an ALJ may not exclusively rely on objective evidence to discount or reject a plaintiff's pain and symptom testimony.  *See* SSR 16-3p ("[W]e will not disregard an individual's statement about the intensity, persistence, and limiting effects of symptoms solely because the objective medical does not substantiate the degree of impairment-related symptoms alleged by the individual.")  The ALJ, however, did not exclusively rely on objective evidence in finding Plaintiff's pain and symptom testimony not fully credible.  He also relied on Plaintiff's activities of daily living, AR

1  36, and the opinions of medical sources.[7]  AR 33-37. Accordingly, the ALJ did not err in relying,

2  in part, on insufficient objective findings to discredit Plaintiff's pain and symptom testimony.

3        Second, Plaintiff argues the ALJ erred in considering his activities of daily living.  The

4  court, however, will not address this issue because it finds that even if the ALJ erred with regard

5  to his assessment of Plaintiff's activities of daily living, this error would be harmless.  This is so

6  because the ALJ gave clear and convincing reasons related to objective findings and medical

7  source opinions (that were supported by substantial evidence) for discrediting Plaintiff's symptom

8  complaints.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir.

9  2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was

10  harmless where the ALJ provided one or more invalid reasons for disbelieving a plaintiff's

11  testimony, but also provided valid reasons that were supported by the record."); *Batson,* 359 F.3d

12  at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for

13  plaintiff's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the

14  plaintiff's testimony was not credible).

## III.    CONCLUSION AND RECOMMENDATION

16        Accordingly, IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for

17  Summary Judgment or Remand (ECF No. 22) be GRANTED IN PART and DENIED IN PART.

18  It is GRANTED to the extent the court recommends remanding this case for further proceedings

19  regarding section (c) of this opinion and DENIED in all other respects.

20        IT IS FURTHER RECOMMENDED that the Commissioner's Cross Motion to Affirm

21  and Response to Plaintiff's Motion for Judgment on the Pleadings (ECF No. 24) be DENIED.

## IV.    NOTICE

23        This report and recommendation is submitted to the United States district judge assigned

24  to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

25  may file a written objection supported by points and authorities within fourteen days of being

26  served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely

27

---

28      [7] The Social Security regulations make clear that there is a distinction between objective medical evidence and the opinions of medical sources.  *See* SSR 16-3P (S.S.A. Oct. 25, 2017).

1    objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153,

2    1157 (9th Cir. 1991).

3

4            DATED: February 6, 2020

5

6

7                                                        BRENDA WEKSLER
                                                         UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28